**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CLINMICRO IMMUNOLOGY CENTER, LLC, | CIVIL ACTION NO. 3:11-02213 |
| Plaintiff, | |
| v. | (JUDGE CAPUTO) |
| PRIMEMED, P.C., and JOAN SALIJKO, | |
| Defendants. | |

## **MEMORANDUM**

Presently before the Court is the Motion to Dismiss Plaintiff ClinMicro Immunology Center, LLC's ("ClinMicro") Complaint (Doc. 10) filed by Defendants PrimeMed, P.C. ("PrimeMed") and Joan Salijko ("Salijko"). Defendants' motion to dismiss will be granted in part and denied in part. Because ClinMicro sufficiently alleges claims for breach of the Laboratory Services Agreement, conversion, accounting, and civil conspiracy, the motion to dismiss Counts II, VIII, IX, and X will be denied. However, because ClinMicro fails to adequately allege claims for tortious interference, Counts VI and VII will be dismissed without prejudice. And, because Plaintiff's claim for fraudulent inducement is barred by the parol evidence rule, and Plaintiff's claim for breach of the duty of good faith and fair dealing is duplicative of its breach of contract claims, Counts V and XII will be dismissed with prejudice.

### **I. Background**

The facts as set forth in the Complaint are as follows:

ClinMicro is an indepedent clinical microbiology and immunology center with expertise in the development, management, administration, and supervision of clinical reference laboratory businesses for medical service providers. (*Compl.*, ¶ 2.) PrimeMed is a licensed medical service provider engaged in the business of providing clinical laboratory services to its patients and to referring providers. (*Id*. at ¶ 4.)

Beginning on or about April 3, 2006, Salijko became employed with ClinMicro as a

laboratory manager. (*Id*. at ¶ 6.) Salijko had multiple responsibilities for ClinMicro, including administering, coordinating, and informing the director of ClinMicro about the technical activities of the company. (*Id*.) In connection with her employment with ClinMicro, Salijko executed a Confidentiality Agreement, a Security Policy Agreement, and a supplement Confidentiality and Non-Disclosure Agreement (collectively the "Confidentiality Agreement"). (*Id*. at ¶ 7.)

In or about August of 2007, PrimeMed entered into discussions with ClinMicro to induce ClinMicro to build a clinical laboratory for PrimeMed. (*Id*. at ¶ 13.) After ClinMicro formulated the plan for development and operation of the laboratory requested by PrimeMed, PrimeMed determined that it wanted ClinMicro to relocate its business operations to the same facilities it occupied. (*Id*. at ¶ 14.) To further its desire, PrimeMed effectively loaned money to ClinMicro to facilitate the requested relocation. (*Id*. at ¶ 15.) The loaned money was used to pay the expenses associated with ClinMicro's required fit-out and renovation of the premises so that ClinMicro could be located at the same facility as PrimeMed. (*Id*.) The relocation ultimately occurred in or about January of 2009. (*Id*.)

After the relocation, ClinMicro began building the clinical laboratory it had already developed for PrimeMed. (*Id*. at ¶ 16.) The new laboratory received state approval to begin operations in or about March of 2009. (*Id.*) In addition to building the new laboratory, PrimeMed also wanted ClinMicro to be available to provide day-to-day management and technical services to the laboratory. (*Id*. at ¶ 17.)

In or about March of 2009, well after the original discussions between the parties and after considerable services had been rendered to PrimeMed by ClinMicro, PrimeMed prepared and provided to ClinMicro proposed agreements intending to memorialize the parties' pre-existing and continuing business relationship. (*Id*. at ¶ 18.) These agreements included: (1) a Laboratory Management Agreement ("LMA"); (2) a Reference Laboratory Services Agreement ("LSA"); (3) a Sublease Agreement; and (4) a Promissory Note. (*Id*.) With respect to the LMA , the parties disputed the amount that PrimeMed was obligated to pay to ClinMicro for "Development Services" for the development of the clinical laboratory.

(*Id*. at ¶ 19.)  As a result, ClinMicro replaced the original Section 4.3 of the LMA with an Addendum that provided for a specific procedure by which the amount owed to ClinMicro for development services would be determined, but PrimeMed neither executed the modified LMA or provided a further modified version of the LMA. (*Id*. at ¶¶ 19-20.)  As a result, ClinMicro never executed the Promissory Note. (*Id*. at ¶ 20.)  Despite the disputes over these documents, the parties proceeded with their relationship and continued conducting business substantially in accordance with the terms of the LMA, the LSA, and the Sublease. (*Id*. at ¶ 21.)

Pursuant to the terms of the LSA, PrimeMed continued to refer to ClinMicro all laboratory service work as identified in the LSA. (*Id*. at ¶ 22.)  Among such work included a substantial number of so-called "Vitamin-D Tests" to be performed by ClinMicro for providers. (*Id*.)  These tests were performed in a distinct and specialized manner by ClinMicro and provided substantial laboratory services and marketability to PrimeMed and ultimately substantial profit to both parties. (*Id*.)

With respect to the laboratory operations provided to PrimeMed by ClinMicro, Salijko served as ClinMicro's laboratory manager. (*Id*. at ¶ 24.)

In or about June of 2011, ClinMicro's main lab management computer went missing from its administrative office. (*Id*. at ¶ 26.)  The computer contained ClinMicro's lab management software, Orchard, which is a pathology information system designed to handle the clinical, molecular, cytology, and pathology testing, reporting and billing functions of ClinMicro. (*Id*.)  The computer was designed to run the Orchard software to analyze, interface with, store, and transmit prescriber data, patient data, cost data, and test data to and from the publisher's host computer. (*Id*.)

The computer was later learned to have been removed from ClinMicro by Salijko, who had taken the computer to PrimeMed so that certain business data and records could be removed and copied. (*Id*. at ¶ 27.)  Once the computer was returned to ClinMicro, however, its functionality was limited, as business, provider, patient, and e-mail data had all been removed from the computer. (*Id*. at ¶ 28.) At the time the computer was taken by

Salijko to PrimeMed, neither party had authorization to remove or delete any data or information stored on the computer. (*Id*. at ¶ 29.)

Thereafter, on or about June 13, 2011, PrimeMed sought to conclude certain aspects of the parties relationship. (*Id*. at ¶ 31.)  In particular, PrimeMed sought to immediately terminate the LMA despite a provision in the agreement requiring at least ninety (90) days notice of intent to terminate prior to the expiration of the existing contractual term. (*Id.*)

Two days later, on June 15, 2011, Solijko resigned her position with ClinMicro and accepted an offer of employment with PrimeMed in substantially the same capacity as her employment with ClinMicro. (*Id*. at 33)  In addition to Salijko, eight (8) other ClinMicro employees were lured to work for PrimeMed in or about June of 2011. (*Id*. at 34.) PrimeMed's solicitation of ClinMicro's employees occurred despite a restriction against such conduct as contained in the LMA. (*Id*. at ¶ 35.)  And, after luring these employees from ClinMicro, PrimeMed started to withdraw from ClinMicro all Vitamin-D Tests and began subcontracting those tests to an unrelated third party and PrimeMed ceased reimbursing ClinMicro for the removal of laboratory waste. (*Id*. at ¶¶ 36-37.)

As a result of these events, ClinMicro commenced this action against PrimeMed and Salijko on November 29, 2011.  ClinMicro has filed a federal law claim against Defendants for violation of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, *et seq*., and a number of supplemental state law claims. (*Compl.*)  On January 30, 2012, PrimeMed and Salijko moved to dismiss the following claims: (1) Count II- Breach of the LSA by PrimeMed; (2) Count V- Fraudulent Inducement by PrimeMed to Enter into Agreements; (3) Count VI- Tortious Interference by PrimeMed with Contract of Salijko; (4) Count VII- Tortious Interference by Salijko with Contracts of PrimeMed; (5) Count VIII- Conversion by PrimeMed and Salijko; (6) Count IX- Accounting; (7) Count X- Civil Conspiracy; and (8) Count XII- Breach of Duty of Good Faith and Fair Dealing.  Defendants' motion to dismiss has now been fully briefed and is ripe for disposition.

## II. Discussion

**A.    Legal Standard for a 12(b)(6) Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *See id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the ... claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

As such, the inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the

complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1949.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

**B.    Defendants' Motion to Dismiss**

Defendants seek dismissal of Counts II, V- X, and XII of Plaintiff's Complaint. These claims will be addressed in turn.

    **1.    Count II- Breach of the LSA by PrimeMed**

ClinMicro alleges that PrimeMed "breached the terms of the LSA at Section 2.1 by improperly terminating the referral to ClinMicro of the Vitamin D Tests and subcontracting those tests to a third party laboratory." (*Compl.*, ¶ 50.) Section 2.1 provides:

> [The ClinMicro Laboratory] agrees to perform only outpatient reference Microbiology Laboratory Services for PrimeMed's patients as are ordered by PrimeMed or a PrimeMed Provider during the Term of this Agreement.

(*Id.* at Ex. C, § 2.1.)  PrimeMed contends, however, that Section 2.1 of the LSA requires only ClinMicro to perform tests ordered by PrimeMed, but does not require PrimeMed to order those tests.  And, because the LSA does not impose any requirements to refer Vitamin-D Tests to ClinMicro, PrimeMed asserts that the Complaint fails to state a claim for breach of the LSA.

In Pennsylvania, "[t]hree elements are necessary to plead properly a cause of action for breach of contract: '(1) the existence of a contract including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages.'" *Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 884 (Pa. Super. 2000) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 a.2d 1053, 1058 (Pa. Super. 1999)).  "'When a writing is clear and unequivocal, its meaning must be ascertained by its contents alone.'" *Great Am. Ins. Co. v. Norwin Sch. Dist.*, 544 F.3d 229, 243 (3d Cir. 2008) (quoting *Murphy v. Duquesne Univ.*, 565 Pa. 571, 777 A.2d 418, 429-30 (2001)).  The question of whether a contract or its terms are ambiguous, however, "is not resolved in a vacuum.  Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Id.*  Accordingly, the parties' "course of performance is always relevant in interpreting a writing." *Atl. Richfield Co. v. Razumic*, 480 Pa. 366, 390 a.2d 736, 741 n.6 (1978).

Here, the Court will not dismiss the breach of the LSA claim against PrimeMed because Section 2.1 of the LSA is subject to more than one reasonable interpretation as to its meaning.  In particular, Section 2.1 of the LSA could be interpreted to mean that ClinMicro had an obligation to perform all services ordered by PrimeMed from ClinMicro, but PrimeMed had no obligation to rely solely on ClinMicro for laboratory services.  On the other hand, the LSA could also be interpreted as requiring PrimeMed to order all laboratory services from ClinMicro during the term of the agreement.  Furthermore, the latter interpretation is supported by ClinMicro's course of performance allegation that all of

PrimeMed's laboratory service work was referred to ClinMicro. (*Compl.*, ¶ 22.)[1] Accordingly, "[a]t this stage, ambiguity in the agreement is sufficient to overcome the motion to dismiss." *KDH Elec. Sys., Inc. v. Curtis Tech. Ltd.*, 826 F. Supp. 2d 782, 797 (E.D. Pa. 2011) (citing *Whelan v. CareerCom Corp.*, 711 F. Supp. 198, 200 (M.D. Pa. 1989)).  Thus, as ClinMicro has adequately alleged the existence of a contract, the breach of a duty imposed by the contract, and resultant damages, ClinMicro may proceed on the breach of the LSA claim.

### 2. Count V- Fraudulent Inducement by PrimeMed

Count V of Plaintiff's Complaint asserts a fraudulent inducement claim against PrimeMed.  Essentially, Count V asserts that PrimeMed fraudulently induced ClinMicro to relocate its facilities and to develop a clinical laboratory for PrimeMed.

The elements of a claim for fraud in the inducement are: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179, 1187 (Pa. Super. 2005) (citing *Skurnowicz v. Lucci*, 798 A.2d 788, 793 (Pa. Super. 2002)).

Here, ClinMicro has sufficiently alleged all elements to raise a reasonable expectation that discovery would reveal evidence to support the fraudulent inducement claim. Plaintiff has alleged that PrimeMed misrepresented that it would maintain a business relationship with ClinMicro in order to induce ClinMicro to develop laboratory operations for PrimeMed. (*Compl.*, ¶¶ 63-64.)  And, these misrepresentations are alleged to have been made with the intent to cause ClinMicro to rely on PrimeMed. (*Id*. at ¶ 66.)  Accordingly, ClinMicro justifiably relied on PrimeMed's misrepresentations to its detriment by relocating its facility and developing a clinical laboratory for PrimeMed. (*Id*. at ¶¶ 64, 66-67.)

---

[1] Indeed, the lack of limiting language in section 2.1, such as "are ordered by PrimeMed or a PrimeMed Provider *from ClinMicro* during the Term of this Agreement," demonstrates that the LSA is not as clear as PrimeMed suggests.

Nevertheless, PrimeMed argues that the fraud in the inducement claim is barred by the parol evidence rule because the LMA and LSA are fully-integrated agreements, the gist-of-the-action doctrine bars the claim, and/or the economic loss doctrine bars the claim. Because the claim is barred by the parol evidence rule, Count V will be dismissed without addressing Defendants' other arguments.

In Pennsylvania, "[o]nce a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the agreement." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 854 A.2d 425, 436-37 (2004) (citing *Bardwell v. Willis Co.*, 375 Pa. 503, 100 A.2d 102, 104 (1953); *McGuire v. Schneider*, 368 Pa. Super. 344, 534 A.2d 115, 117 (Pa. Super. 1987)). As a result, "parol evidence may not be admitted based on a claim that there was fraud in the inducement of the contract, i.e., that an opposing party made false representations that induced the complaining party to agree to the contract." *Id.* at 437 n.26. Accordingly, "fraudulent inducement claims are typically not allowed to proceed in Pennsylvania if the contract at issue is fully integrated because of application of the parol evidence rule." *First United. Bank & Trust v. PNC Fin. Servs. Grp., Inc.*, 667 F. Supp. 2d 443, 451 (M.D. Pa. 2009) (citing *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1300 (3d Cir. 1996)).

In this case, the LMA and LSA provide that: "[t]his Agreement contains the entire understandings of the parties with respect to the subject-matters of this Agreement and there are no other written or oral understandings or agreements between the parties with respect to the subject matters of this Agreement other than those contained herein." (*Compl.*, Ex. B, § 8.14; Ex. C, § 6.14.) Based on these provisions, at the time of execution of the agreements, the parties had entered into fully-integrated agreements that superceded any alleged prior misrepresentations.

In opposition to PrimeMed's motion to dismiss, Plaintiff asserts that the parol evidence rule is not applicable here because the defendant's fraudulent representations are

9

not covered in the written contract. Yet, the LMA and LSA incorporate the same misrepresentations that are alleged in the Complaint. (*Compl.*, ¶ 63.) Specifically, the agreements provide that PrimeMed would: (1) make payments for developmental services, (*Id*. at Ex. B., § 4.3); (2) make payments for management fees, (*Id*. at Ex. B, § 4.2), (3) refer services to ClinMicro, (*Id*. at Ex. C, § 2.1); (4) make payments for waste removal; and (5) respect ClinMicro's property and employees (*Id*.)  These obligations were not simply extraneous to the terms of the LMA or LSA, but instead, are express requirements of the agreements- which ClinMicro alleges PrimeMed misrepresented.[2] The parol evidence rule, therefore, "prevents [ClinMicro] from offering any evidence of a prior representation to a fully integrated agreement." *N. Am. Roofing & Sheeting Co. v. Bldg. & Constr. Trades Council of Phila.*, No. 99-2050, 2000 WL 230214, at *7 (E.D. Pa. Beb. 29, 2000). Thus, as the parol evidence rule bars the fraudulent inducement claim, Count V will be dismissed. *See, e.g., Saltzman v. TD Bank*, N.A., No. 10-3265, 2011 WL 1193112, at *4-*6 (E.D. Pa. Mar. 29, 2011); *see also Interwave Tech., Inc. v. Rockwell Automation, Inc.*, No. 05-398, 2005 WL 3605272, at *18 (E.D. Pa. Dec. 30, 2005) ("integration clauses and contract terms that specifically cover the subject matter of the alleged fraudulent inducement frequently result in dismissal of fraudulent inducement claims in the Third Circuit").

### 3. Count VI- Tortious Interference by PrimeMed

ClinMicro next asserts a claim for tortious interference against PrimeMed for interfering with ClinMicro's contractual relationship and Confidentiality Agreement with Salijko.

The elements of a tortious interference with existing contractual relations under Pennsylvania law are:

---

[2]   Even though Section 2.1 of the LSA is subject to two reasonable interpretations and parol evidence may be admissible to clarify contractual terms, *cf. Schnell Bank of N.Y. Mellon*, 828 F. Supp. 2d 798, 805 (E.D. Pa. 2011), this finding alone is insufficient to allow ClinMicro to proceed on an independent fraudulent inducement claim based on the LSA's broad and unambiguous integration provision.

> (1) that there be an existing contractual relationship between the plaintiff and a third party; (2) that the defendant purposely or intentionally interfered with the performance of that contract by <u>inducing a breach or otherwise causing the third party not to perform</u>; (3) that the defendant was not privileged to act in this manner; and (4) that the plaintiff suffered pecuniary loss as a result of the breach of contract.

*Fishkin v. Susquehanna Partners, G.P.*, 563 F. Supp. 2d 547, 586 (E.D. Pa. 2008) (citing *Remick v. Manfredy*, 238 F.3d 248, 263 (3d Cir. 2001)) (emphasis added). Furthermore, "'a tortious interference with contract claim is barred by the gist of the action doctrine if it is not independent of a contract claim that is pled along with it.'" *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 621 (E.D. Pa. 2010) (quoting *Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491, 505 (E.D. Pa. 2008)).

Here, Defendant's motion to dismiss the tortious interference claim against PrimeMed will be dismissed without prejudice. In particular, while ClinMicro adequately alleges a contractual relationship with Salijko, (*Compl.*, ¶ 7), that PrimeMed was not authorized or privileged to acquire ClinMicro's confidential information, (*Id*. at ¶ 29), and that ClinMicro suffered loss as a result of Salijko's breach of her contractual agreements, (*Id*. at ¶ 73), the Complaint wholly fails to allege conduct by PrimeMed which induced Salijko to breach her Confidentiality Agreement. Essentially, the allegations in the Complaint are that Salijko breached the terms of the Confidentiality Agreements by distributing ClinMicro proprietary information to PrimeMed. However, the Complaint is absent of allegations that PrimeMed encouraged, facilitated, or induced Salijko to distribute confidential ClinMicro data in violation of her Confidentiality Agreement. Without such allegations, ClinMicro has failed to allege that PrimeMed caused Salijko not to perform in accordance with the terms of her confidentiality obligations. As such, Count VI will be dismissed, but ClinMicro will be granted leave to amend the tortious interference claim against PrimeMed.[3]

---

[3] It is not clear, at this stage of the proceedings, whether the gist-of-the-action doctrine bars Plaintiff's tortious interference claim against PrimeMed. Although allegations that PrimeMed improperly solicited Salijko in violation of the LMA would be barred by the gist-of-the-action doctrine, *see, e.g., Brown & Brown*, 745 F. Supp. 2d at 621, allegations that PrimeMed induced Salijko to deliver

### 4. Count VII- Tortious Interference by Salijko

Defendants also seek dismissal of ClinMicro's tortious interference claim against Salijko. Specifically, Defendants argue that ClinMicro fails to allege any acts by Salijko which interfered with ClinMicro's contractual relationships.

As with ClinMicro's tortious interference claim against PrimeMed, Plaintiff's tortious interference claim against Salijko fails to allege any action by Salijko that induced PrimeMed to breach the LMA or LSA. While ClinMicro alleges that its contract with PrimeMed was interfered by Salijko's distribution of the information contained on the ClinMicro computer to PrimeMed, and the subsequent termination of aspects of the parties' relationship, Plaintiff fails to set forth any clear allegations that this action was induced or caused by Salijko's conduct. Stated differently, ClinMicro does not allege that Salijko induced or caused PrimeMed to stop referring Vitamin-D Tests to ClinMicro. Nor does ClinMicro allege that PrimeMed terminated its relationship with ClinMicro due to Salijko. As such, Plaintiff has failed to state a tortious interference claim against PrimeMed. Nevertheless, because ClinMicro may be able to state a tortious interference claim based on these facts, it will be granted leave to amend the tortious interference claim.

### 5. Count VIII- Conversion

ClinMicro also asserts a conversion claim against both Salijko and PrimeMed. Defendants argue that Plaintiff's property rights are not chattel and not subject to being converted.

Under Pennsylvania law, "conversion is the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *Stevenson v. Econ. Bank of Ambridge*, 413 Pa. 442, 197 A. 2d 721, 726 (1964) (internal quotation marks omitted). Pennsylvania

---

confidential information in violation of her Confidentiality Agreement to damage ClinMicro's business may not be encompassed within the doctrine. But because Plaintiff fails to adequately state a tortious interference claim, this issue need not be resolved at this time.

recognizes a claim for conversion of business information. *See Pierre & Carlo, Inc. v. Premier Salons, Inc.*, 713 F. Supp. 2d 471, 481 (E.D. Pa. 2010). "To state a claim for conversion of business information, a party must allege the acquisition of confidential business information through misconduct." *Bancorp Bank v. Isaacs*, No. 07-1907, 2010 WL 1141336, at *9 (E.D. Pa. Mar. 25, 2010). "Confidential information includes 'information about one's business whether or not it constitutes a trade secret.'" *Pierre & Carlo*, 713 F. Supp. 2d at 481-82 (quoting Restatement of Torts § 759 cmt. b.)

Here, ClinMicro has adequately stated a conversion of business information claim under Pennsylvania law. Specifically, Plaintiff alleges that Salijko and PrimeMed acquired confidential information such as customer lists, customer preferences, and marketing practices. (*Compl.*, ¶ 53.) And, ClinMicro has alleged that this information was obtained through misconduct- the unauthorized taking and relocating of the ClinMicro computer by Salijko for the purpose of accessing and distributing the confidential Clinmicro information. (*Id*. at ¶¶ 29-30.) Based on these allegations, ClinMicro has adequately stated a conversion claim.

### 6. Count IX- Accounting

Count IX of Plaintiff's Complaint requests an accounting of all information and property removed by Defendants. In moving to dismiss Plaintiff's request for an accounting, Defendants argue that Plaintiff fails to allege an inadequate remedy at law.

Under Pennsylvania law, "an equitable accounting is improper where no fiduciary relationship exists between the parties, no fraud or misrepresentation is alleged, the accounts are not mutual or complicated, or the plaintiff possesses an adequate remedy at law." *Rock v. Pyle*, 720 A.2d 137, 142 (Pa. Super.1998). As described by the Third Circuit, "[a]n accounting is an essentially equitable remedy, the right to which arises generally from the defendant's possession of money or property which, because of some particular relationship between himself and the plaintiff, the defendant is obliged to surrender." *American Air Filter Co. v. McNichol*, 527 F.2d 1297, 1300 (3d Cir.1975). Here, while Plaintiff may have an adequate remedy at law, because the Complaint contains non-

dismissed tort claims, there is a possibility that an accounting will be appropriate. *See, e.g., Abdulzaziz v. City of Phila.*, No. 00-5672, 2001 WL 818476, at *4 (E.D. Pa. June 26, 2001). As such, the accounting claim will not be dismissed at this time.

### 7. Count X- Civil Conspiracy

Count X of Plaintiff's Complaint asserts a civil conspiracy claim against PrimeMed and Salijko. Defendants argue that because no valid underlying tort claims have been asserted, the civil conspiracy must be dismissed.

In Pennsylvania, "'to state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage.'" *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (quoting *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987-988 (1997)). Furthermore, "the established rule is that a cause of action for civil conspiracy requires a separate underlying tort as a predicate for liability." *Levin v. Upper Makefield Twp.*, 90 F. App'x 653, 14 (3d Cir. 2004) (citations omitted).

As noted above, Plaintiff has sufficiently alleged a claim for conversion of business information. As such, the allegations in Plaintiff's Complaint satisfy the threshold requirement of an existing underlying tort for a civil conspiracy claim. *Cf. Mindbridge.com, Inc. v. Testa*, No.06-4985, 2007 WL 2108555, at *3 (E.D. Pa. July 19, 2007). Furthermore, Defendants are alleged to have acted in concert to relocate the ClinMicro computer from its premises to unlawfully obtain ClinMicro business information and data. (*Compl.*, ¶ 30.) As such, Defendants temporarily moved the ClinMicro computer to PrimeMed's premises to facilitate the conversion of ClinMicro's confidential business information. (*Id.*) And, due to this conduct, ClinMicro has suffered severe and ongoing harm. (*Id.*, at ¶¶ 54, 92.)[4] These

---

[4] Defendants argue that Plaintiff's civil conspiracy claim should be dismissed because "it must be shown that the sole purpose of the conspiracy was to injure the plaintiff. This necessary proposition is negated by a showing that the acts

allegations are sufficient to survive a motion to dismiss.

### 8. Count XII- Good Faith and Fair Dealing

ClinMicro also asserts a claim for good faith and fair dealing. Defendants seek to dismiss the claim because Pennsylvania law does not recognize a separate claim for good faith and fair dealing. In opposition, Plaintiff asserts that it is not asserting a claim for the implied duty of good faith and fair dealing, but instead, that the claim is "another breach of contract claim asserting separate violations against PrimeMed for its express breach of both LMA § 8.12 and LSA § 6.12."

Count XII of the Complaint will be dismissed because it is duplicative of Plaintiff's breach of contract claims. In particular, Plaintiff adequately alleged breaches of the LMA and LSA in Counts I and II. And, as the provisions Plaintiff relies on for the breach of the duty of good faith and fair dealing claim are encompassed within the breach of contract claims in Counts I and II, Count XII is superfluous and duplicative of these claims. Accordingly, Count XII will be dismissed with prejudice.

## III. Conclusion

For the above stated reasons, Defendants' motion to dismiss will be granted in part and denied in part.

An appropriate order follows.

| | |
|---|---|
| July 23, 2012 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

---

alleged were done for professional or business benefit." *Bro-Tech Corp. v. Thermax, Inc.*, 651 S. Supp. 2d 378, 418 (E.D. Pa. 2009). However, because Plaintiff may plead alternative theories at the motion to dismiss stage- i.e. that the confidential information was converted for Defendants' business benefit, or, alternatively, simply to harm Plaintiff- the civil conspiracy claim will not be dismissed at this time. Nevertheless, to the extent that discovery demonstrates a business motive for Defendants' actions, this would make a civil conspiracy claim untenable. *See id.* at 419.